The final argument is in Appeal No. 06-3165, Paine v. Merit System Protection Board. Mr. Bruce, good morning to you. Welcome. Good morning, judges. Please proceed. You might want to pull the microphone down a little lower. Thank you, sir. The floor is yours. Good morning, your honors. My name is Don Bruce, and I represent Terry Paine. He's the petitioner here, and of course, the respondent is the Merit System Protection Board. Can I ask you to just help me with the time sequence? We have a decision received from the agency on what date? Somewhere in April, I believe? Yes. What was the date? The date was April 8th. April 8th. Received on April 8th. Now, the filing of the appeal with the board, what date was that, filing date? Filing for the EEO complaint. No, no, no, no, the appeal to the board. The second appeal. That was on. The one that we're reviewing now. All right. What's the date of that? The date of that is, I believe it was on June 10th. OK, June 10th. Now, that's approximately two months, right? Right. Now, the regulation seems to require a deadline of 30 days. So if that regulation applies, then this appeal was way late. It was late by almost a month, right? If the first paragraph of the regulation is used, yes. Right. Now, why didn't you file within 30 days, and then we wouldn't be here in this mess? Well, as I indicated in the brief, and as the report of investigation indicates, Mr. Payne moved to northern Minnesota to work for a contract construction company to build a power line. And no one could get a hold of him. When they did the interrogatories for. When you say no one, did you try to communicate with your client as to whether he wanted to appeal to the board the adverse agency decision? I couldn't reach him. You attempted to reach him and had no success? I just had his number at his house in Devil's Lake, North Dakota, which he wasn't there. Well, are you saying you called him and he never could get your call taken? Well, his wife was there, but they were separated. And I don't know how well they were communicating. And so when I would call her and tell her that I need to speak to Terry Payne, the petitioner here, I would say, could you get a message to him? She said she would try. I didn't know how to get a hold of him. Well, why did you finally file the appeal June 10? Because I finally got a hold of him, and he said, yeah, let's file it. Otherwise, I didn't have any authority to file it, and I didn't know if he wanted to. But the reasons for the delay were perhaps correct and unfortunate. They don't help you, do they, because the appeal was filed more than 30 days after the receiving decision. But that's only if you apply paragraph 1 of the CFR. There's no other deadline anywhere in the regulation. So the regulation seems to say, if a decision is received by a petitioner or counsel, then they have up to 30 days to file with the board, or the door is forever shut. That's only, your honor, that's only true if the agency submits its final agency decision within 120 days. Well, I don't think. You want to rely on number 2. Pardon me? You want to rely on number 2. That's correct. The agency did issue its decision. Didn't it issue the decision on April 7? They might have signed it then, but we didn't get it. Issued the decision. Statute says, if the agency has not resolved the matter or issued a decision, that paragraph does not talk about date of receipt. That talks about issued the decision. So April 7th was 2 days before the end of the period then. So they issued the decision on time, not late under the 120-day rule, right? No. According to Foley, Department of Health and Human Services, the respondent rule that the time limit for section 1201.154 begins to run when the appellant or his designated representative receives the agency's decision. But that's not the regulation before us right now. We're talking about part 2, which talks about 120 days. And as Judge Lurie points out, the measurement of the 120 days is the date that they issue of decision, not receipt of decision. And so following that regulation by its literal terms, the decision was not issued outside beyond the 120-day mark and therefore, by its own terms, part 2 cannot apply. And even if we were to read that as meaning the date of receipt, wasn't it received on April 8th at his residence of record? That's still within 120 days. It was his residence of record, but he had moved because he and his wife had separated. And he moved to northern Minnesota. But was the agency informed of his new address? Yes, and that information. What's the proof of that? It was in Mr. Garrett, the investigator for the agency, his report, which I made a part of the appendix. What's the date of that? Somewhere before April, presumably. Yes. So you're saying someone in the agency knew of the new northern address? Well, it's on page 63 of the appendix. Yeah, but stick with me. It's an agency investigator who had information about the new address. But Judge Lurie's question was whether the petitioner informed the agency that they should send his mail to Minnesota, not to where he used to live. And I think the answer to that is no, he didn't, right? I sent a letter to Mr. Garrett, who is the agency's representative, indicating to him that Mr. Payne was in northern Minnesota and that I couldn't get the interrogatories to him. So Mr. Garrett arranged for a telephone call. Mr. Payne went to a nearby town. And they did the affidavit interrogatory over the phone. Now, Mr. Gallegos, the agency EEO officer, signed the transmittal letter for the agency final decision on the 7th of April in 2005. He also sent the report of investigation to me on the same day, April 7, 2005. He had an opportunity then to read Mr. Garrett's report stating in footnote one, and that is also on appendix 63, that Mr. Payne was in northern Minnesota, not in North Dakota. Mr. Bruce, on what date did your client receive the agency decision? It was sometime after about, we're April 8th. So he received it by April the 15th. Somewhere in that time frame. So by April 15th, he'd received it. Yes. So 30 days had run by the time he filed his appeal. Yes.  You have to fall under the provisions of subsection 2. That's correct. OK. So you agree that if we rule against you in that sense, in other words, if, as Judge Lurie was suggesting, 2 does not apply, that you lose. That's correct. Now, as to the application of 2 versus 1, is it critical to your position that any time the 120th day has arrived before a decision issues, that as of day 121, no decision having issued, a petitioner has infinity to file an appeal with the board. As soon as we get to day 121, if the agency hasn't previously issued the decision, then there's no deadline and the petitioner can file any year, any decade, as long as he's still alive. Right? That would seem to be the case. Now, isn't that a bit of an impractical interpretation of this two-part rule to say, well, in the first part, they give a deadline, kind of short deadline, only 30 days. But in the second part, they set up a situation in which there will never be a deadline and the suit could be filed 30 years later. The whole purpose of the rule is to have a deadline, both for the agency and for the petitioner to file an appeal. But you're asking us to give it a reading in which there'll be no deadline ever for a petitioner in the circumstance where the agency took as much as 121 days to issue. Well, I'm reading the literal interpretation of the rule and it says any time after the expiration of 120 days. Sure. But the premise is and no decision ever issues. As long as that remains the case, it is open-ended. But as soon as a decision issues, day 122, day 150, day 200, whatever, then the 30-day clock kicks in. That's how to read those two provisions in harmony instead of in this other fashion that you suggest. But this court also said the word or between statutes or regulations is disjunctive. In other words, it separates them. So they should be read separately apart from each other. Not necessarily. There are different provisions that do different things. But they have an inner relationship. That's why they're in the same regulation. Well, if the agency does not issue a final decision within 120 days, the first section of the regulation doesn't even apply. The second one kicks in. And that part says any time after 120 days. It's not the petitioner's fault that the agency or the regulation is written loosely. He could have written, he could have filed his appeal to the board tomorrow. It still fall within regulation, sub part 2. All right, I think your position is very clear. Why don't you save the rest of your time for rebuttal because you're down below 3 minutes. Thank you, Mr. Bruce. Mr. Angelo. What's the harm if we agree with Mr. Bruce's interpretation? Well, his interpretation, your honor, that an individual may file his board appeal. What's the harm if we accept his construction of this two-part regulation? Well, it would allow an individual, your honor, to file a board appeal years, decades afterwards. Not necessarily. The agency can change the regulation. The MSPB could change that regulation, your honor, but I think reading the two parts of the regulation together, I believe they're clear. But the harm, again, is that an individual could file their EEO complaint many years later. Well, let's focus on this alleged harm. How many cases are out there where the board acted and issued a decision, but it was after 120 days? So that if we accept his interpretation, how many cases are going to be adjudicated by the board in a highly delayed fashion? I do not know that, your honor. Well, don't you think when the government comes before a court and says there's a terrible harm here, you just can't let this happen, this is catastrophically unfair and harmful to the government, that you better have some factual basis for making any such claim? Your honor, what we're looking at here is appeal from a final agency EEO decision. So it is not a decision of the MSPB. I understand that, but if you're asserting harm, shouldn't you have some factual foundation for the existence of harm? Your honor, I have no idea how many EEO complaints are filed in the federal government each year, each of which generates a fad. You could easily have found out how many people filed in the board later than 30 days from receipt of a decision, which decision issued after 120 days from the filing of the EEO complaint. So you could have told us exactly how many cases fall in the category currently at the board as this case. What's the number? I'm sorry, your honor. I can attempt to find that information and file a supplemental pleading with the court. Suppose there are none others. Then the harm is reduced to this one case. If there are no other cases, but again, if there were precedent established, it would allow another individual to file an appeal decades later, perhaps after agency witnesses have died, records have been destroyed under a record of a country schedule. Change the reg. You're the master of what the reg says. The board can change the reg any day it wants for any reason it wants provided only it's not inconsistent with the enabling statute or the constitution, which certainly wouldn't be, I wouldn't expect. So if there's a problem here, the board has the total solution. It can implement any time it wants. Senator, let me ask you, during when Mr. Bruce was up there in the colloquy that took place between him and Chief Judge Michelle, there was a distinction drawn between the situation where no decision is ever issued and the situation where a decision is issued, but it's issued late, 125, 130 days after, whatever. And the thinking seemed to be there that in any event, if no decision has issued, the person can file at any time. Do you agree with that? If the agency has not yet issued a final agency decision, the individual's rights to file vests, and they may file at any time. But once that decision issues, they must file within 30 days. Now let me ask you, we have, it appears, leaving aside for the moment this question that came up when Judge Lurie was speaking to Mr. Bruce about whether the 120-day situation even applies here, it does appear that there's some language in our Lange decision, 219, Fed 3rd, 1345, where we have said, it says, while Lange received a letter from the EEO accepting his complaint for investigation, the EEO did not resolve the matter or issue a final decision within 120 days after Lange filed his complaint. Thus, this is the key part, thus in accordance with the governing regulation, Lange's appeal to the MSPB would have been timely if filed any time, emphasize any time, after May 6, 1997, the 120th calendar day after he filed his EEO complaint. Right, Your Honor. I think in Lange, the agency, at the time the individual filed his MSPB appeal, had not yet issued a final agency decision. An EEOC administrative judge had issued an initial decision, which has been sent to the employing agency. And the employing agency is then supposed to either accept or reject that decision. And the employing agency issues a FAD, a final agency decision. So you're saying Lange does not directly apply to the situation here. Absolutely, Your Honor. If we were in that circumstance of the 125th day. Right, Your Honor. And I think if you were to look at then Vice Chair Slavitt's dissent before the MSPB in Lange, it is clear there that that is the circumstance, that the agency had never issued a final agency decision when the individual filed the board appeal. But in this case, Your Honor, of course. There had just been an interim AJ decision, it hadn't been a final agency decision. There had been an EEOC administrative judge decision, which an employing agency is supposed to incorporate into their FAD, their final agency decision by either accepting. But his or her decision does not constitute a final agency decision for purposes of this 120 day rule. Absolutely, Your Honor, because the administrative judge is not acting for the employing agency. But again, I need to stress in this particular case that the court need not look at that question because the petitioner here received the final agency decision on the 120th day. But even beyond that, even if in line with what Judge Lurie was saying, the matter was resolved on April 7th, which is the 119th day. Absolutely, the agency issued their decision. So a 120 day issue doesn't even apply. Absolutely, Your Honor. The agency issued their final agency decision on day 119, sent it to the address of record that the petitioner used. The Devil's Lake, North Dakota address is the address he used when he filed his appeal with the board on December 9th. Excuse me, when he filed his EEO complaint with the agency on December 9th. When he filed his MSPB appeal on December 22nd. Then, of course, that case was dismissed without prejudice so he could pursue his EEO rights. The Devil's Lake address is the same address he used when he filed his second board appeal on June 13th. Devil's Lake is the old address? Devil's Lake is his address of record. You're right, the petitioner argued. That's the address to which Mr. Joseph, pardon me, Mr. Bruce was referring as where the estranged wife still lives. But he's somewhere else. Right, as I understand it, he was in northern Minnesota. And Mr. Bruce said that the agency was informed that he had a change of address. Is that correct? There is nothing in the record before the MSPB indicating that there was any information provided to the agency. The only reference to another location, not even a specific address, another location is in the report of investigation, which was never submitted to the MSPB. It is not in the MSPB record. In that, the EEO investigator said that he had had trouble locating the petitioner and noted that as a result, he had to do the EEO interviews out of the normal sequence. But there's no indication that the agency was told of a specific address. And none of that was provided to the MSPB in the administrative record before the board. Now, as I understood Mr. Bruce, he investigator's report stating the new address. No, Your Honor. It does not state the new address. I believe it is at Petitioner's Appendix 59. There's the report of the investigation. And the footnote is on page 62 of the petitioner's appendix. And in it, the investigator simply states that because the petitioner had moved, that he conducted the EEO investigations out of the normal sequence. Normally, you interview the- But you've read the report. I have, Your Honor. And there's nothing anywhere in the text or footnotes or anywhere else in the report that gives a new postal address. Not that I'm aware of, Your Honor. And again, that was not submitted to the MSPB. It is not before the MSPB in the administrative record of the board. Anything further? The court has no additional questions. Thank you. Mr. Bruce. Well, Your Honor, in rebuttal, I think the agency was sloppy in the way they communicated with myself  Whoa, whoa, whoa, wait a second. Let's get a few things straight. Does the investigative report contain the new northern Minnesota postal address of your client, yes or no? Mr. Garrett wrote a letter to Mr. Gallegos indicating that he was having trouble finding a new address. I don't think he had an address there. His information was sent to a construction company. I didn't have an address for him. Only his wife had an address that I'm aware of. I thought you told us in your opening argument that the investigator was informed of the new address somewhere in Minnesota. Well, I stand corrected. He was informed of his new location. But not an address that one could mail a letter to. He's in a different place. It's not helpful to say, well, somebody's now in Saskatchewan if you can't give them a town name and a zip code. But he had a phone number for him. You could have called him, and he did call him and interviewed him. And I asked Mr. Payne, myself personally, if he had given him an address to communicate with him, and he said yes. I don't know if the investigator communicated that information to the agency. In other words, the address of the record was the address where the decision, which occurred within 120 days, was made and received. I informed Mr. Garrett in writing and the agency, basically, that Mr. Payne no longer lived in Devil's Lake, North Dakota. So that was no longer, as far as I was concerned, his residence of record, because he didn't live there. Well, who did you write to? I'm a little confused. I wrote to William Garrett, an attorney of Germantown, Maryland, who did the investigation for the agency. Garrett was an attorney investigator for the agency? Yes, Your Honor. And you wrote to him, asserting the old address was no longer any good, but not giving a new address because you didn't have it? No, but I gave him a phone number for the company that he worked for. Now? In any event, the matter was resolved, decided by the agency within 120 days. I don't think it was, Your Honor. For example, I'm Native American, OK? I practice law in tribal court in North Dakota. My only affiliation with the court is I practice law there, just like I'm before this court. Yet the agency sent the final decision to me, to the tribal court. Some clerk there signed off for it, and it sat there for four or five days, I believe. I didn't get my copy of it until April 12th. Now, the agency had my phone number. They had my address all the time. No, Mr. Bruce, it was the AHA found, I think, and correct me if I'm wrong, the board administrative judge found, I believe, that the decision was mailed on April the 7th, OK? Yes. Now, that means that on April the 7th, even though you had not received it and Mr. Payne had not received it, it does mean that no later than April 7th, the agency had decided the case and had resolved it or issued a decision in the words of the regulation. That's, I think, the point that Judge Lurie raised earlier. And I did respond, stating that in Folio versus Department of Health and Human Services, 84 MSPBR on page 404 and 405, the respondent ruled the time limit under section 1201.154B, which is the regulation we're talking about, begins to run when the appellant or his representative receives the agency's decision. Now, they could have signed this thing and issued it on the 5th. But the statute isn't told then. It's told when I receive it or when Mr. Payne receives it. And I didn't receive it until April 12th. And he didn't receive it until sometime after April 8th, because it was forwarded on to him by his wife in northern Minnesota to the construction company. And she estimates he got it on the 15th. So even if it's true, and it is true, that the agency signed this decision on the 7th, the time doesn't start to run until I get it. And they knew my address. What time? The 120 days or the 30 days? It seemed to me in Foley, what the board was talking about is what act triggers the 30-day clock. And if there are two notices, one to the attorney and one to the petitioner, the clock, logically enough, should start at the time the first of them receives the notice. But that has nothing to do with whether the board has issued a notice within 120 days. You can't trigger a statute if you don't get it to the individuals. I mean, what if they didn't mail it? But you're talking about triggering paragraph 1. Yes. Not paragraph 2. Yes. So how was I to know? No, Foley speaks to paragraph 1, not paragraph 2. What if they would have signed the letter and just put it in a file and never sent it to me? How was I to know that this was a decision issue? It seems to me that if the agency is going to issue a decision, they need to tell the appellant or the petitioner and need to tell his representative. Now, there's no excuse for them to send my copy of this decision to the tribal court. I mean, all of my letterhead has my address, my phone numbers, my emails. Why didn't they send it to me? I would have got it on the 8th. Okay? We wouldn't be here, as he indicated earlier. I take it you have no idea why the address used by the agency was the address of the tribal court rather than the address on your legal letterhead. I'm not going to speculate about that, Your Honor. I don't know. It is kind of bizarre. It is a very odd circumstance. Forget about whether they could have found out his postal address in Minnesota or not. They knew your postal address in a very simple, straightforward, conventional fashion. They even knew my physical location because I received FedEx material from the agency on this case in the past. At your law office. At my law office. Not the tribal court. Not the tribal court. But the decision went to the tribal court. That's correct, Your Honor. Wow. I have no more. All right. We thank you, sir. Thank you, Mr. Angelo. It's a very bizarre circumstance and we'll take it under advisement.